UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORERS WELFARE FUND, an employee benefit plan, *et al.*, | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) | |
| vs. | ) ) | Case No. 4:09CV00401 ERW |
| SYMMETRY LANDSCAPING, INC., a Missouri Corporation, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| SYMMETRY DESIGN AND INSTALLATION, LLC, a Missouri Limited Liability Corporation, | ) ) ) ) | |
| Defendant/Counterclaim Plaintiff. | ) ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court after a non-jury trial to address the claims asserted by

Plaintiffs in their First Amended Complaint, ECF No. 27, and the counterclaim asserted by

Defendant Symmetry Design & Installation, LLC in their Answer, ECF No. 36. A one-day bench

trial on these matters was held before this Court on January 23, 2012. The Court now makes the

following findings of fact and conclusions of law. Fed. R. Civ. P. 52(a).

## I.    FINDINGS OF FACT

Plaintiffs bring this suit under the Employee Retirement Income Security Act (ERISA),

29 U.S.C. § 1132, and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

Plaintiffs are a large number of employee benefit plans, the duly designated and acting trustees and fiduciaries of those plans, and associated labor organizations. Joint Stip. of Uncontested Facts ("Jt. Stip.") ¶¶ 1-5, ECF No. 63-1; Trial Tr. 11-15, Jan. 23, 2012. Each Plaintiff is either an employee benefit plan, a trustee, or a fidiciary within meaning of ERISA, Jt. Stip. ¶¶ 1-4; Trial Tr. 11-14, or a labor organization within meaning of the National Labor Relations Act and the LMRA, Jt. Stip. ¶ 5; Trial Tr. 14-15. Plaintiffs have named two business entities as defendants: (1) Symmetry Landscaping, Inc., a Missouri corporation; and (2) Symmetry Design & Installation, LLC, a Missouri limited liability corporation. Jt. Stip. ¶ 6; Trial Tr. 15. Each Defendant is an employer affecting interstate commerce within meaning of the ERISA and the LMRA. Jt. Stip. ¶ 6; Trial Tr. 15. Plaintiffs have not named Symmetry Irrigation, LLC, a Missouri limited liability company, as a defendant here. Jurisdiction and venue are proper.

Plaintiffs allege Defendants have failed to make contributions into certain employee benefit funds, as obligated by various collective bargaining agreements. Pls.' First Am. Compl., ECF No. 27; *see* 29 U.S.C. §§ 1132(g)(2), 1145. Plaintiffs seek to collect these delinquent contributions, as well as liquidated damages, interest, costs, and attorneys' fees. *Id.* Symmetry Design & Installation, LLC has asserted a counterclaim against Plaintiffs, alleging it has mistakenly paid excessive contributions to Plaintiffs and is due a refund. Def. Symmetry Design & Installation's Countercl., ECF No. 36 at 3; *see* 29 U.S.C. § 1103(c)(2)(A).

At the one-day bench trial of this matter, Plaintiffs presented their case-in-chief by calling two witnesses, Bernard Difani and R. Christopher Madison. Defendants presented its case-in-chief by calling one witness, Theodore Bergman. Plaintiffs then called two rebuttal witnesses, John Massa and Richard Casson, and Defendants recalled Theodore Bergman as a sur-rebuttal witness. Plaintiffs introduced several documents into evidence, and Defendants introduced one

document into evidence.  The Court makes the following findings of fact based on this evidence presented.

Theodore Bergman graduated from the University of Illinois in 1985 with a Bachelor of Science in Ornamental Horticulture.  Trial Tr. 53.  Bergman has worked in the horticulture industry since his graduation, generally by operating his own businesses.  *Id.*  During his career, Bergman has formed and operated various business entities to facilitate his work in this industry. *Id.* at 54.

Bergman began operating under the name Symmetry Landscaping in 1987.  *Id.* at 53-54. Bergman incorporated that entity under Missouri law in 1993 and it became Symmetry Landscaping, Inc. ("SL, Inc.").  *Id.* at 15, 53-54, 113; Jt. Stip. ¶ 6.  Initially, SL, Inc. performed maintenance, mowing, and pruning landscaping work at commercial job sites.  Trial Tr. at 79. However, the function of SL, Inc. changed in 2003, upon Bergman's formation of a number of limited liability companies.[1]  *Id.* at 80.  SL, Inc. ceased performing landscaping work, and it ceased employing landscaping laborers.  *Id.* at 57-58, 68.  Instead, SL, Inc. began handling the administrative functions for each of Bergman's newly-formed LLCs.  *Id.* at 57, 68.  In turn, the LLCs assumed performance of all landscaping work.  *Id.*  Bergman created SL, Inc. and the LLCs to assist in accounting and job costing recordkeeping, and to reduce exposure to liability resulting from personal injury and property damage.  *Id.* at 113-15.

SL, Inc. operated out of 11793 Missouri Bottom Road.  *Id.* at 86.  Bergman and his wife

---

[1] In addition to Symmetry Irrigation, LLC and Symmetry Design & Installation, LLC, which are discussed below, Bergman also formed the following LLCs which are not at issue in this case: Larix (snow removal); Salix (equipment repair); and Symmetry Maintenance (horticulture maintenance).  Trial Tr. 80-81.  Bergman formed each of these LLCs in 2003, and for each he served as the Managing Member.  *Id.*

were the sole owners of SL, Inc. *Id.* at 82. Bergman served as SL, Inc.'s President, and he handled business administration matters for both the corporation and the LLCs. Trial Tr. at 54, 81, 87. Leslie Dougherty served as SL, Inc.'s Chief Financial Officer, and she reported directly to Bergman. *Id.* at 59. Along with Bergman, Dougherty handled the bookkeeping for both SL, Inc. and each LLC. *Id.* at 59, 82. Prior to Dougherty, Megan Enz served as SL, Inc.'s Office Manager, and she performed equivalent job functions. *Id.* at 84. One of these functions was for Dougherty and Enz to file union benefit fund reports on behalf of each LLC. *Id.* at 85. Darren Duello served as SL, Inc.'s General Operations Manager. *Id.* at 60, 83. Duello was charged with overseeing the work operations of each LLC and the laborers they employed. *Id.* at 60, 83, 84-85. From time to time, SL, Inc. also employed other administrative staff. *Id.* at 83. On December 31, 2010, SL, Inc. ceased operations and laid off all its employees. *Id.* at 54, 58-59, 60, 84-85. SL, Inc. is a defendant here. Pls.' First Am. Compl. at 2, ¶ 6; Jt. Stip. ¶ 6; Trial Tr. 15.

One of the LLCs Bergman formed in 2003 was Symmetry Irrigation, LLC ("SI, LLC"). Trial Tr. at 56, 79. SI, LLC operated out of 11793 Missouri Bottom Road. *Id.* at 86. Bergman served as SI, LLC's Managing Member. *Id.* at 81. SI, LLC's business was designing and installing irrigation systems. *Id*. at 56-57. On December 31, 2010, SI, LLC permanently ceased operations. *Id.* at 58-59. SI, LLC has not been named as a defendant in this case. *See* Pls.' First Am. Compl. at 2, ¶ 6.

A second LLC Bergman formed in 2003 was Symmetry Design & Installation, LLC ("SD&I, LLC"). Trial Tr. at 54, 79. SD&I, LLC also operated out of 11793 Missouri Bottom Road. *Id.* at 86. Bergman served as SD&I, LLC's Managing Member. *Id.* at 81. SD&I, LLC's business was installing landscaping, including trees, shrubs, and modular block walls. *Id.* at 55.

A modular block wall is a type of retaining wall that is constructed by stacking stones; grids are placed behind the wall and used to support the landmass being retained. *Id.* On December 31, 2010, SD&I, LLC permanently ceased operations. *Id.* at 58-59. SD&I, LLC is a defendant here. Pls.' First Am. Compl. at 2, ¶ 6; Jt. Stip. ¶ 6; Trial Tr. 15.

Bergman kept the operations of each LLC separate and did not refer to them interchangeably. *Id.* at 57, 117. Each LLC had its own logo and the vehicles used by each LLC were marked differently. *Id.* at 149. Laborers were assigned to work for only one LLC, but laborers sometimes would perform work for multiple LLCs; when this occurred, one LLC charged the other LLC for the laborer's work. *Id.* at 57, 89-90. On occasion, more than one of Bergman's LLCs would work at a single job site, and the LLCs sometimes shared work equipment. *Id.* at 90. Each of the businesses that are relevant here – SL, Inc.; SI, LLC; and SD&I, LLC – operated out of the same office. *Id.* at 86.

Beginning in 2003, Bergman executed a number of collective bargaining agreements ("CBAs") with certain Plaintiffs on behalf of the companies he formed. Trial Tr. at 18-25. One of these CBAs was the May 1, 2007 to April 20, 2012 Seed/Sod & Nursery Contractors CBA. Pls.' Ex. 3-1. On the signature page of this CBA, the words "Symmetry Landscaping" appear in typed lettering. Pls.' Ex 3-1 at 18, 4-3 at 2. Bergman signed underneath this typed lettering, identifying himself as "President." *Id.* Bergman did not prepare this CBA. Trial Tr. at 58.

Bergman also executed an addendum which amended the Seed/Sod & Nursery Contractors CBA discussed above. Trial Tr. 24; Pls.' Ex. 3-2. As with the CBA itself, the words "Symmetry Irrigation" appear in typed lettering. Pls.' Ex. 3-2 at 7, Pls.' Ex. 4-4. Bergman signed underneath this typed lettering, identifying himself as "President." Pls.' Ex. 3-2 at 7; Pls'. Ex. 4-4. Bergman testified his signing of this addendum was reflexive, in that he signed it as it

was presented to him. Trial Tr. at 88. As with the CBA itself, Bergman did not prepare this addendum. *Id.* at 58.

Section 3.01 of the amended CBA identifies the scope of the labor tasks covered by the CBA and its addendum:

> The Employer recognizes Laborers' Local # 110 as the sole and exclusive collective bargaining representative for all of its employees engaged in the installation of irrigation systems on new commercial, new residential and public work jobsites located within the City and County of St. Louis and the Counties of St. Charles, Jefferson, Franklin, and Warren in the State of Missouri. Such work shall include, but not be limited to, the operation of any tools or equipment required for the installation of irrigation pipe, and the installation of low voltage wiring, heads, clocks and/or any other components of a new irrigation system. Maintenance of existing irrigation systems is not covered.

Pls. Ex. 3-2 at 1. Labor tasks that fall within this scope are referred to as "covered work." *See, e.g.*, Trial Tr. at 21, 40, 71-72, 108, 120-21, 125, 127, 130, 132, 136, 137, 139-43, 149-50.

This addendum amends the CBA so that it contains provisions requiring SL, Inc. to make contributions to certain employee pension, welfare, and other trusts funds. Pls.' Ex. 3-2 at 3-5. Here, these funds are Plaintiffs. *Id.*; Pls.' First Am. Compl. ¶¶ 1-4; Jt. Stip. ¶¶ 1-4; Trial Tr. 11-14. Sections 7.02A to 7.02D require SL, Inc. to make contributions to these funds. Pls. Ex. 3-2 at 3-5. The amount of contributions SL, Inc. must make is determined by the number of hours its employees spend engaged in work covered by the CBA. *Id.* Hours during which SL, Inc. employees perform covered work are referred to as "reportable hours," and SL, Inc. is required to notify the funds of these hours in a process referred to as "reporting hours." *See, e.g.*, Trial Tr. at 16, 17, 21, 24, 29, 30, 31, 38.

Section 7.09 empowers certain Plaintiffs to examine and audit SL Inc.'s payroll records. Pls. Ex. 3-2 at 4-5. If legal action becomes necessary to collect delinquent contributions, section 7.02D requires SL, Inc. to pay the amount of the delinquent contributions, plus examination and

audit costs and attorneys' fees. *Id.* at 3-4. Under section 7.02D, SL, Inc. is also obligated to pay

liquidated damages in the amount of ten percent (10%) of any delinquent contributions. *Id.* at 4.

Bergman also executed two CBAs on behalf of SD&I, LLC. On September 20, 2004,

Bergman executed the May 2002 to April 2007 Modular Block Wall CBA on behalf of SD&I,

LLC. Pls.' Exs. 1, 4-1. Bergman signed this CBA and identified himself as the "President" of

SD&I, LLC. Pls.' Ex. 4-1. Section 3.01 identifies the work covered by this CBA:

> Employer recognizes Laborers' Local 110 as the sole and exclusive collective
> bargaining representative for all of its employees engaged in **the preparation and
> installation of reinforced and gravity walls and all commercial,** new residential
> and public work construction sites located within the City and County of St. Louis
> and in the Counties of St. Charles, Jefferson, Franklin, and Warren in the State of
> Missouri. **The preparation and installation of such work shall include but not
> be limited to the digging for footings, laying of materials, backfilling, and
> compacting.**

Pls.' Ex. 1 at 3 (emphasis in original). Other provisions within this CBA require SD&I, LLC to

report hours for the purpose of making contributions, to permit audit and examinations, and to

pay liquidated damages, interest, costs, and fees. *Id.* at 8-12. These provisions are equivalent to

the similar provisions in the Seed/Sod & Nursery Contractors CBA addendum discussed above.

*Id.*

Bergman also executed the May 1, 2007 to April 30, 2010 Modular Block Wall CBA on

behalf of SD&I, LLC. Pls.' Ex. 2. Bergman signed his name and identified himself as the

"President" of SD&I, LLC. Pls.' Ex. 2 at 21; Pls.' Ex. 4-2. This CBA was a successor

agreement to the initial Modular Block Wall CBA and it contained nearly identical provisions.

Trial Tr. at 22-23. For instance, section 3.01 identifies the work covered by this successor CBA:

> The employer recognizes **the Eastern Missouri Laborers' District Council** as the
> sole and exclusive collective bargaining representative for all of its employees
> engaged in the preparation and installation of reinforced and gravity walls on all
> commercial, new residential and public work construction sites located within the

> City and County of St. Louis and the Counties of St. Charles, Jefferson, Franklin, and Warren in the State of Missouri. The preparation and installation of such work shall include but not be limited to the digging for footings, laying of materials, backfilling, and compacting. **Construction of sound walls and puzzle walls shall be performed under the SITE Improvement Association collective bargaining agreement.**

Pls.' Ex. 1 at 3 (emphasis in original). Again, other provisions within this CBA obligate to SD&I, LLC to report hours for the purpose of making contributions, to permit audit and examinations, and to pay liquidated damages, interest, costs, and fees. *Id.* at 8-12.

Bernard Difani has been employed for the past 24 years by the Greater St. Louis Construction Laborers Welfare Fund ("the Fund"), which is a plaintiff, here. Trial Tr. at 18. He is currently the Fund's Administrative Manager, and in this capacity he oversees the operation of multiple union trust funds. *Id.* These funds are the recipients of the contributions made under the CBAs discussed above. At trial, DiFani testified that the Fund determined Defendants were delinquent in their contributions. *Id.* at 25. Thus, the Fund hired the auditing firm of Wolfe, Nilges, Nahorski ("WNN") to conduct an examination of Defendants' records. *Id.* at 25-26. The purpose of this examination was to determine whether Defendants were delinquent in their contributions, and if so, the amount of that delinquency. *Id.* at 25-27. WNN has performed examinations of this nature for the Fund for 25 years, and they perform similar services for other unions which operate trust funds. *Id.* at 26, 36.

WNN conducted an examination of Defendants' records for the period from July 1, 2005 through February 28, 2009. *Id.* at 27, 36-37. John Massa is the WNN employee who conducted the fieldwork for this examination. *Id.* at 38, 124. Massa earned a Bachelor of Science in Business Administration from Illinois State University, and he has been performing examinations for WNN for over ten years. *Id.* at 123-24. R. Christopher Madison is Massa's

immediate supervisor. *Id.* at 44, 135. Madison earned a Bachelor of Science in Business Administration from Pittsburg State University, and he has been employed by WNN since 1983. *Id.* at 35. Madison is a shareholder in WNN, is WNN's designated partner for employee benefit matters, and is the supervisor of WNN's payroll examination department. *Id.* Massa reported his findings to Madison, and Madison carefully reviewed Massa's work. *Id.* at 44. At trial, the parties agreed that WNN conducted an examination of Defendants' records, as opposed to an audit of them. *See, e.g.*, *id.* at 8-9, 17, 25, 28, 33, 38; Pls.' Ex. A at 14.

To conduct this examination, WNN sent Defendants a letter requesting various documents. Trial Tr. at 37. WNN then traveled to Defendants' offices, obtained the requested documents, and reviewed them to determine the number of hours Defendants failed to report to the Fund, as is required by the CBAs. *Id.* Defendants provided all requested documentation to WNN. *Id.* at 61, 125.

WNN determined the number of hours Defendants were required to report to the Fund by reviewing Defendants' payroll tax records, payroll tax reports, cash disbursement records, and project proposals. *Id.* at 124, 125, 137; *see* Pls.' Ex. 9 at 14. WNN relied on Defendants' project proposals when those proposals were the only work project documentation Defendants could produce. Trial Tr. at 125; Pls. Ex. 9 at 35-37. WNN did not rely upon representations made by Bergman, because Defendants did not provide any evidence to corroborate those representations. Trial Tr. at 40-41, 46-47, 48-49. WNN requires all employers to provide corroborating evidence, because on numerous occasions it has found employers' representations to be unreliable. *Id.* at 48-49. There is no evidence WNN determined whether Defendants' were required to report hours by interviewing Defendants' employees and clients or by visiting Defendants' job sites.

WNN issued two reports based on the sources identified above. The first was a Preliminary Report setting forth the conclusions WNN reached based on its examination. *Id.* at 44-45, 61. WNN issued this Preliminary Report to Defendants and the Fund. *Id.* at 44-45, 61, 125. In response to this Preliminary Report, Defendants disputed WNN's findings and produced additional documentation to WNN, including job proposals. *Id.* at 44-45, 61, 127; Pls. Ex. 9 at 35-36. This led WNN to revise its conclusions. Trial Tr. at 27, 38-39, 61, 125, 127; Pls.' Ex. 9 at 14, 36-37.

WNN then issued a Payroll Examination Report setting forth its final conclusions as to Defendants' delinquency and resultant liability. Trial Tr. at 27, 38-39, 61, 125-26; Pls.' Ex. 9 at 14, 36-37. As it is written, WNN's Report addresses the liability of two entities: "Symmetry Landscaping, LLC", and SD&I, LLC. "Symmetry Landscaping, LLC" is apparently an entity that does not exist. Based on the litigation history of this case, the Court understands WNN to have intended to reference SL, Inc. in its report. *See, e.g.*, Pls.' Reply in Supp. of Pls.' Mot. for Summ. J., ECF No. 57.

At trial, Plaintiffs devoted little time to presenting evidence of the contents and substance of WNN's Payroll Examination Report. Similarly, Plaintiffs presented little evidence as to how WNN used the sources identified above to determine whether Defendants' were required to report hours pursuant to the CBAs. Thus, the Court has relied upon notes contained within the Report itself. *See* Pls. Ex. 9 at 35-37.

No notes within WNN's Report discuss its findings with respect to the Seed/Sod & Nursery Contractors CBA. With respect to the Modular Block Wall CBA, the Report's notes reveal that WNN concluded SD&I, LLC completed 27 jobs which included reportable modular block work. The Report organizes these jobs into three categories, based on the existence and

10

contents of their respective job proposals. The first of these categories is "Jobs Represented as MBW [*i.e.*, modular block wall] and Partial MBW Jobs"; WNN listed 15 jobs as falling within this category. *Id.* at 38. With respect to these 15 jobs, the Report's indicate that WNN removed all hours arising from work not covered by the CBA. *Id.* at 36. The second category is "Jobs on Job List - No Proposal Provided"; WNN lists eight jobs as falling within this category.[2] *Id.* at 38; Trial Tr. at 71-74. With respect to these eight jobs, the Report's notes indicate that "[h]ours noted for work performed on jobs for which a proposal was not provided, were not removed." *Id.* at 36. Therefore, WNN concluded SD&I, LLC was liable for the hours worked on these eight jobs. Finally, the third category is "Jobs noted as other than MBW on Job List, but a Retaining Wall is included in the Proposal"; WNN lists four jobs as falling within this category.[3] *Id.* at 38; Trial Tr. at 74-78. With respect to these four jobs, the Report's notes state the following: "Hours worked on a job represented as a non-[modular block wall] job and where the proposal appears to include a Modular Block Wall, the hours were not removed." Pls.' Ex. 9 at 36. Therefore, WNN concluded SD&I, LLC was liable for all hours worked on these four jobs. Among those four jobs are the First Bank of Webster Groves job and the Magic House job. Pls. Ex. 9 at 38; Trial Tr. at 77-78.

The conclusions in WNN's Report are presented as a series of lists of Defendants' employees who purportedly performed work covered by the CBAs during the period from July 2005 to February 2009. Pls.' Ex. 9. These employee lists are separated according to the

---

[2] The eight jobs identified in this category are: Bank of America Chesterfield; CC-BLCK-080813; CC-912-11/28/2005; First Bank; CC-SITE-40706; CC-STALB-081806; CC-THFB-090208; and CC-WIL-112805. Pls.' Ex. 9 at 38.

[3] The four jobs identified in this category are: CC-CCCC-070227; CC-CRAIG-102105; CC-FRST-070112; and CC-MAGC-070320C. Pls.' Ex. 9 at 38.

relevant CBA. For each employee, the Report lists the months that employee performed work covered by one of the CBAs. For each of those months, the Report identifies the hours the employee worked and the resulting liability for contributions, liquidated damages, and interest. The Report gives no indication of on what tasks or at which jobs sites an employee worked for a given month.

Regardless of these difficulties, WNN concluded in its Report that Defendants failed to report a total of 4,950.08 hours. Trial Tr. at 39; Pls.' Ex. 9 at 50. WNN concluded that 3,158 hours that were reportable under the Seed/Sod & Nursery Contractors agreement and addendum, giving rise to a total liability of $18,140.56. Trial Tr. at 40; Pls.' Ex. 9 at 2, 12, 50. WNN concluded these 3,158 hours were reportable, in part, at the direction of Plaintiffs' legal counsel. Trial Tr. at 49-51, 51-52; Pls.' Ex. 9 at 37. WNN concluded further that 1,792.08 of these hours were reportable under the Modular Block Wall agreements, giving rise to a total liability of $17,535.67. Trial Tr. at 39-40; Pls.' Ex. 9 at 2, 9, 50. WNN's conclusions account for its finding that Defendants overreported a total of 2,824 hours; these hours were "credited back" to Defendants, thereby leading WNN to conclude that Defendants underreported fewer hours. Trial Tr. at 42, 95-97, 130; Pls.' Ex. 9.

WNN provided a copy of its Report to the Fund. Trial Tr. at 27; Pls.' Ex. 9. Difani testified that the Fund used this Report to determine that Defendants owed $35,676.23 in delinquent contributions, liquidated damages, and interest. Pls.' Ex. 9 at 2; Trial Tr. at 29. Specifically, the Fund found that Defendants owed $26,202.30 in delinquent contributions, $4,317.29 in liquidated damages, and $5,156.64 in accumulated interest. Pls.' Ex. 9 at 2; Trial Tr. at 27-29. Interest was calculated through August 31, 2010, according to the variable Internal Revenue Service rate. Trial Tr. at 28. Neither Defendant has paid any portion of these amounts.

*Id.* at 29.

In addition, Difani testified that the Fund's records reflect that SL, Inc. reported hours for labor performed under the amended Seed/Sod & Nursery Contractors CBA. *Id.* Those hours were reported under the name "Symmetry Landscaping." *Id.* At trial, Bergman admitted he submitted reports to the Fund under the name Symmetry Landscaping for hours worked on irrigation jobs by employees of Symmetry Irrigation, LLC. *Id.* at 89, 116-17.

At the time of trial, WNN had billed the Fund a total of $13,600.50 to complete this examination. Pls.' Ex. 10; Trial Tr. at 43-44. Documentation submitted by WNN states Massa worked 144.8 hours and Madison worked 4.7 hours to complete the examination. Pls.' Ex. 10. WNN charges $85 per hour for Massa's work and $275 per hour for Madison's work. *Id.*; Trial Tr. at 43. The Fund has also incurred a total of $450.50 in legal costs in bringing this case, consisting of: $350.00 in filing fees; $49.00 for service of the Complaint; and $51.50 for service of the Amended Complaint. Perez Supplemental Aff. ¶7-8, Feb. 2, 2012, ECF No. 77-1. In addition, the Fund incurred a total of $9,079.50 in attorneys' fees, consisting of: 53 hours worked by attorney Emily Perez, at a rate between $155.00 and $165.00 per hour; 3.2 hours worked by attorney Sherrie A. Schroder, at a rate between $165.00 and $175.00 per hour; .1 hour worked by attorney Greg A. Campbell, at a rate between $165.00 and $175.00 per hour; and 2 hours worked by legal assistant Christine A. Dothage, at a rate between $75.00 and $85.00 per hour. *Id.* ¶¶ 2, 4-5, 8. As to all of these amounts, Plaintiffs do not distinguish what portion of the costs are attributable to SL, Inc. and to SD&I, LLC.

Bergman disputes the conclusions found in WNN's Report. Bergman is familiar with the work of his LLCs because he served as their Managing Member and he handled matters of business administration. Trial Tr. at 54, 67, 81, 87. Bergman also visited the LLCs' job sites.

13

*Id.* at 107. Bergman testified that WNN's Report contains errors with respect to its calculation of how many hours should have been reported pursuant to the Modular Block Wall agreement. *Id.* at 71-78. Bergman testified that WNN's Report erroneously calculated the number of hours SD&I, LLC spent working on jobs classified as "Jobs on Job List - No Proposal Provided," because these job projects included no modular block wall. *Id.* at 71-74; *see* Pls.' Ex. 9 at 38. Bergman testified further that WNN's Report erroneously concluded all hours spent working on jobs classified as "Jobs noted as other than MBW on Job List, but a Retaining Wall is included in the Proposal" were reportable, because modular block wall labor was only a small portion of these jobs. Trial Tr. at 74-78; *see* Pls. Ex. 9 at 38. In addition, Bergman testified that when he was uncertain whether or not the hours worked at a certain job site were reportable, he consulted Richard Casson, SD&I, LLC's union representative. Trial Tr. at 75-78. Bergman testified that SD&I, LLC relied upon Casson's assurances that the jobs in question were not reportable. *Id.* at 75-77.

Casson testified at trial. He has been employed by Laborers' Local 110 as a Business Agent since 2005. *Id.* at 138. His duties include monitoring the modular block wall and seed/sod and nursery construction contractors industry. *Id.* As part of his job duties, Casson monitored SD&I, LLC's work on the First Bank job site, and he visited that site on a weekly basis. *Id.* at 140-141. While he was present at that site, Casson testified he observed SD&I, LLC employees engaged in work covered by the Modular Block Wall agreement. *Id.* at 141. In addition, Casson testified that he did not remember ever discussing whether or not a particular work project was reportable with Bergman or any other person associated with SD&I, LLC. *Id.* at 140. Casson takes notes regarding his communications with employers, and he has no notes of any such discussions. *Id.*

Bergman prepared a report to respond to WNN's Payroll Examination Report and Plaintiffs' Motion for Summary Judgment. Defs.' Ex. A; Trial Tr. at 62, 90-91. Bergman prepared this report with the assistance of Dougherty. Trial Tr. at 62, 90-91. Dougherty did not testify at trial due to serious illness. *Id.* at 62-63. Defendants' report lists every employee of SD&I, LLC and SI, LLC. Trial Tr. at 65. For each month an employee worked, the report indicates on which job an employee worked, the number of hours an employee worked, and the number of those hours that were reportable. Defs.' Ex. A; Trial Tr. at 63-65. Based on this report, Bergman testified that SD&I, LLC overreported a total of 1,618 hours to the Fund. *Id.* at 112. By multiplying this number of hours by an average wage of seven dollars per hour ($7/hour), Bergman estimated Plaintiffs mistakenly made excessive contributions to the Fund in the amount of $11,400. *Id.* at 112, 115-16. SD&I, LLC seeks to recover this amount for its counterclaim. *Id.* Defendants' report contains numerous inconsistencies and errors. *Id.* at 95, 100-106, 128-29.

Finally, Difani testified that he was aware of SD&I, LLC's counterclaim against Plaintiffs. *Id.* at 29. Difani testified that regardless of whether or not an employer has mistakenly made contributions to the Fund, the Fund does not issue refunds if it has already paid benefits to an employer's employees. *Id.* at 30-31. The Fund does not do so because the Fund is not able to recover benefits that have already provided to employees, and thus issuing a refund would cause the Fund to suffer a loss. *Id.* at 31-32. For the time period covered by the Fund's examination, DiFani testified that the Fund provided health, welfare, and pension benefits to Defendants' employees. *Id.* at 34.

## II.    CONCLUSIONS OF LAW

Plaintiffs have brought suit against SL, Inc. and SD&I, LLC to enforce section 515 of

ERISA.  This section is entitled "Delinquent contributions" and it provides as follows:

> Every employer who is obligated to make contributions to a multiemployer plan
> under the terms of the plan or under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with law, make such contributions in accordance
> with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  As a result, to resolve the claims presented the Court must look to the terms

of the CBAs to determine under what conditions Defendants are obligated to make contributions

to the Fund.  *Id.*  To prevail on their claims, Plaintiffs must show: (1) Defendants are bound by a

CBA; (2) that CBA requires Defendants to make contributions based on the number of hours its

employees engage in work covered by the CBA; (3) Defendants' employees have in fact

engaged in such covered work; and (4) Defendants failed to make contributions based on that

covered work.

Plaintiffs have brought suit against SL, Inc. and SD&I, LLC under section 502(g)(2) of

ERISA.  29 U.S.C. § 1132(g)(2).  This section provides as follows:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to
> enforce section 1145 of this title in which a judgment in favor of the plan is
> awarded, the court shall award the plan–
>
> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of–
>
> > (i) interest on the unpaid contributions, or
> >
> > (ii) liquidated damages provided for under the plan in an amount
> > not in excess of 20 percent (or such higher percentage as may be
> > permitted under Federal or State law) of the amount determined by
> > the court under subparagraph (A),

16

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

*Id.* If Plaintiffs prevail on their claims, then this section and the parties' CBAs entitle Plaintiffs to recover delinquent contributions, liquidated damages, interest, costs, and reasonable attorneys' fees. *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech. Inc.*, 552 F. Supp. 2d 952, 956-57 (E.D. Mo. 2007).

The plaintiff bears the burden of proof in an action under ERISA to collect delinquent contributions. *Greater St. Louis Const. Laborers Welfare Fund v. AGR Const. Co.*, No. 4:09-CV-907 (CEJ), 2010 WL 4319349, at *2 (E.D. Mo. Oct. 22, 2010). However, where an employer has made the amount of damages uncertain by failing to maintain or produce adequate records, some courts have shifted the burden and required an employer to disprove the plaintiff's evidence. *Id.*; *see, e.g.*, *Greater St. Louis Const. Laborers Welfare Fund v. Don Richardson Concrete Co.*, 775 F. Supp. 1249, 1254 (E.D. Mo. 1991) (payroll records destroyed while in employer's custody and employer failed to timely respond to plaintiff's discovery requests); *Greater St. Louis Const. Laborers Welfare Fund v. D & H Concrete, Inc.*, no. 4:05-cv-2352 (CEJ), 2008 WL 2437419, *2 (E.D. Mo. June 12, 2008) ("The imprecision of this method was necessitated by the defendants' failure to provide the information requested of [it] by plaintiffs. It has been established in this district that a defendant will not be permitted to reduce its liability by alluding to inaccuracies when the fault for the inaccuracies lies squarely in the defendant's lap.") (internal quotation omitted). Here, the evidence produced at trial

established that Defendants provided WNN with all requested documentation. As a result, Plaintiffs bear the burden of proof on their claims.

Plaintiffs have named as defendants two business entities, SL, Inc. and SD&I, LLC, and have asserted a single claim against each. The Court will address Plaintiffs' claims, in turn.

### A. Plaintiffs' Claim against SL, Inc.

Plaintiffs seek to enforce the amended Seed/Sod & Nursery Contractors CBA against SL, Inc. In general, only an employer who signs a CBA is bound by its terms. *Crest Tankers, Inc. v. Nat'l Mar. Union of Am.*, 796 F.2d 234, 237 (8th Cir. 1986). Bergman signed the CBA and subsequent addendum, identifying himself each time as the President of Symmetry Landscaping. As a result, SL, Inc. is bound by the terms of the CBA and its addendum.

The amended CBA requires an employer to make contributions based on the number of hours its employees spend installing irrigation systems in the St. Louis metropolitan area. At trial, Plaintiffs' evidence of SL, Inc.'s liability for delinquent contributions was WNN's Payroll Examination Report. As discussed above, this Report erroneously referred to "Symmetry Landscaping, LLC," and WNN intended to reference SL, Inc. However, the evidence presented at trial clearly established that SL, Inc. was an administrative entity whose employees engaged only in business management. In light of this evidence, any suggestion by WNN's Report that SL, Inc. employed laborers who in fact engaged in work covered by the Amended CBA is not credible and entitled to no weight. As a result, Plaintiffs have failed to present any evidence that SL, Inc. employees engaged in work covered by the amended CBA.

Through WNN's Report, Plaintiffs did present evidence establishing that SI, LLC's employees engaged in work covered by the amended CBA. However, Bergman did not sign the agreement and addendum on behalf of SI, LLC, and so that entity is not bound to the terms of

18

those documents by virtue of his signature. Moreover, Plaintiffs have not named SI, LLC as a defendant here.

Because of this problem, Plaintiffs seek to hold SL, Inc. liable for the hours SI, LLC employees engaged in work covered by the irrigation agreement and addendum. To do so, Plaintiffs rely upon two theories of liability. Plaintiffs' first theory of liability is the alter ego theory. When two business entities operate as alter egos, the courts may disregard the legal fiction that a corporate identity separates them. *Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997). Eighth Circuit precedent holds that in an ERISA action, principles of corporate law govern whether two entities operate as alter egos.[4] *Id.*; *Greater St. Louis Const. Laborers Welfare Fund v. Mertens Plumbing & Mech. Inc.*, 552 F. Supp. 2d 952, 955 (E.D. Mo. 2007). Under corporate law, "the legal fiction of the separate corporate entity may be rejected in the case of a corporation that (1) is controlled

---

[4]In their post-trial brief, Plaintiffs argued that SL, Inc. and SI, LLC are a single employer under principles of labor law. Pls.' Post-Trial Brief at 4, ECF No. 77. However, when an action arises under ERISA, the Eighth Circuit applies principles of corporate law to determine whether to disregard the corporate form. *Greater Kan. City Laborers Pension Fund*, 104 F.3d at 1055 ("The factors set forth in *Iowa Express* and *Crest Tankers* for determining alter ego status under labor law do not control the question of [the defendants'] corporate relationship, if any, because the present action arises under §§ 502(g) and 515 of ERISA, 29 U.S.C. §§ 1132(g), 1145."). As a result, the proper analytical framework for the issue presented here is the alter ego doctrine as developed under corporate law. *Id.*; *id.* at 1056 n.7 ("The single employer doctrine is not relevant to the present case, however, because we hold that corporate law principles govern the assessment of the corporate relationship, if any, between [the defendants].").

In contrast, the single employer and alter ego labor law doctrines set forth *in Iowa Express* and *Crest Tankers* apply when an action arises under the National Labor Relations Act. *Id.* at 1056 n.7; *see also Crest Tankers*, 796 F.2d 234, 237-38 (8th Cir. 1986) (discussing doctrines) *Iowa Express Distrib., Inc. v. NLRB*, 739 F.2d 1305, 1310-1311 (8th Cir. 1984) (same); *id.* at 1310 ("The single employer doctrine is a Board creation that treats two or more related enterprises as a single employer for purposes of holding the enterprises jointly to a single bargaining obligation or *for the purpose of considering liability for any unfair labor practices.*") (emphasis added).

by another to the extent that it has independent existence in form only[5] and (2) is used as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Greater Kan. City Laborers Pension Fund*, 104 F.3d at 1055.

Here, Plaintiffs presented evidence suggesting SL, Inc. exerted a high degree of control over SI, LLC: the businesses were created at the same time; they shared common ownership and management; and they operated out of the same offices. However, Plaintiffs presented no evidence that Bergman created these business entities "as a subterfuge to defeat public convenience, to justify wrong, or to perpetuate a fraud." *Greater Kan. City Laborers Pension Fund*, 104 F.3d at 1055. Instead, Bergman testified credibly that he formed the entities to assist in bookkeeping and to protect his interests from liability. In addition, Plaintiffs presented no evidence that Bergman caused "Symmetry Landscaping" to appear on the CBA and its addendum in an attempt to escape liability. Bergman drafted neither the CBA nor its addendum, but rather signed those documents in the form they were presented to him. Therefore, Plaintiffs have failed to show the corporate form distinguishing SL, Inc. from SI, LLC should be disregarded.

Plaintiffs' second theory is that SL, Inc. has adopted the amended CBA "through conduct manifesting an intention to be bound." *Greater St. Louis Const. Laborers Welfare Fund v. Don Richardson Concrete Co.*, 775 F. Supp. 1249, 1253 (E.D. Mo. 1991). In *Don Richardson Concrete Co.*, the defendant employer signed a first CBA and submitted

---

[5]"In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, [the courts] look to a number of factors, including: the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations." *Mertens Plumbing & Mech., Inc.*, 552 F. Supp. 2d at 955-56.

contributions pursuant to it. *Id.* at 1252-53. At the time that first CBA expired, the defendant chose not to sign a subsequent CBA. *Id.* Nevertheless, the defendant continued to submit contributions as though defendant had in fact signed the subsequent CBA. *Id.* at 1252-53. Later, when the plaintiffs sued to collect contributions owed under the unsigned subsequent CBA, the court found that the defendant's continued payments manifested its intention to be bound by that CBA. *Id.* at 1252. As a result, the court held that the defendant was bound to that CBA, even though the defendant never signed it. *Id.*

Plaintiffs' reliance upon *Don Richardson Concrete Co.* is misplaced. That case describes a means by which an employer may be held bound to a CBA it did not sign. Here, it is clear that SL, Inc. is bound by the amended CBA because Bergman signed those documents on behalf of SL, Inc. Furthermore, both Difani and Bergman's testimony at trial established that SL, Inc. reported hours covered by the amended CBA, even though those hours were actually worked by SI, LLC employees. However, because these reports were submitted by SL, Inc., they do not provide evidence of a willingness by SI, LLC to be bound to the amended CBA. Finally, because SL, Inc. and SI, LLC are distinct corporate entities, the submitted reports do not provide evidence that SL, Inc. employees engaged in work covered by the agreement and addendum. As a result, Plaintiffs have produced no evidence that SL, Inc. in fact engaged in work covered by the amended CBA. Therefore, SL, Inc. had no obligation under the amended CBA to make contributions. SL, Inc. is entitled to judgment on Plaintiffs' claim.

### B. Plaintiffs' Claims against SD&I, LLC

Next, Plaintiffs seek to enforce the Modular Block Wall CBAs against SD&I, LLC. In general, only an employer who signs a CBA is bound by its terms. *Crest Tankers, Inc. v. Nat'l Mar. Union of Am.*, 796 F.2d 234, 237 (8th Cir. 1986). Bergman signed the CBAs, identifying

himself each time as the President of SD&I, LLC. As a result, SD&I, LLC is bound by the terms of those CBAs and may be liable for contributions pursuant to them.

Under these agreements, SD&I, LLC must make a certain contribution to Plaintiffs for each hour its employees spend preparing and installing modular block walls in the St. Louis metropolitan area.[6] As a result, to prevail here, Plaintiffs must prove the number of hours SD&I, LLC employees actually engaged in this work.

The primary evidence Plaintiffs produced of the hours SD&I, LLC employees engaged in covered work was WNN's Payroll Examination Report. In this Report, WNN concluded that SD&I, LLC failed to make contributions for 1,792.08 hours which were reportable under the Modular Block Wall agreements, resulting in liability of $17,535.67.

At trial, SD&I, LLC raised various challenges to these conclusions. SD&I, LLC's first challenge was that WNN erroneously concluded the hours worked on the eight jobs labeled "Jobs on List - No Proposal Provided" were reportable. Bergman testified that these job involved no modular block work whatsoever. Bergman is familiar with the work projects SD&I, LLC completed because he visited its job sites and managed its business affairs.

As discussed above, if SD&I, LLC failed to provide a work project proposal for a certain

---

[6]At trial, Casson testified that when an employer performs any work at a job site that is covered by the Modular Block Wall CBA, then all work performed at that job site is covered by the CBA. Trial Tr. at 140. As a result, Casson's testimony suggested that even though modular block wall work might be only a small portion of the work performed at a particular job site, all hours worked at that job site are deemed covered by the CBA and should be reported under it. Accordingly, Casson's testimony was evidence as to how the Fund interprets and implements the CBA. However, if contractual language is unambiguous, then the interpretation of that language is a question of law to be decided by the court. *See, e.g.*, *Weitz Co. v. MH Washington,* 631 F.3d 510, 524 (8th Cir. 2011). The Court finds that the Modular Block Wall CBAs unambiguously require SD&I, LLC to make contributions based only on the hours its employees actually spend engaged in covered work. As a result, Casson's testimony and all similar testimony is disregarded and is of no weight.

job site, then WNN counted all hours worked on that job as hours that should have been reported under the CBA. Thus, WNN concluded SD&I, LLC was liable for contributions on all hours worked on these eight jobs merely because SD&I, LLC did not present WNN with a job proposal for them. However, the absence of a job proposal does not establish whether the hours worked on these jobs were reportable under the CBA, and it does not establish whether SD&I, LLC failed to make contributions on those hours. Apart from WNN's Report, Plaintiffs produced no other evidence showing that SD&I, LLC failed to make proper contributions for these jobs. Plaintiffs have therefore produced no credible evidence that SD&I, LLC employees actually engaged in work covered by the CBAs with respect to these jobs.

WNN's Report gives no indication of how these eight jobs factored into WNN's overall conclusions about SD&I, LLC's liability for delinquent contributions. WNN's Report therefore presents a problem, in that it is impossible to determine what portion of SD&I, LLC's liability is attributable to these eight jobs. The most the Court can determine with any probability is that these eight jobs represent 29.6% of the twenty-seven jobs WNN reviewed to create its Report. This percentage is equal to $5,190.55 of SD&I, LLC's total liability in WNN's Report. Accordingly, the Court will reduce SD&I, LLC's ultimate liability, if any, by this amount. This solution is most appropriate response to the issue presented, given the problems presented by WNN's methodology and Plaintiffs' evidence.

SD&I, LLC's second challenge is that WNN erroneously concluded that all hours worked on the four jobs labeled "Jobs noted as other than MBW on Job List, but a Retaining Wall is included in the Proposal" were reportable. Bergman testified that it is erroneous to hold SD&I, LLC liable for all hours worked on these jobs, in that modular block wall work was only a small portion of these jobs. Again, Bergman is familiar with the work projects SD&I, LLC

completes, in that he visits its job sites and handles its business affairs.

With respect to two of these four jobs,[7] Bergman testified that SD&I, LLC removed an existing wall and then replaced it. Based on Bergman's testimony, such work is covered by the CBAs and so this challenge to WNN's Report fails.

Next, Bergman testified about the First Bank in Webster Groves job.[8] Bergman testified that only one quarter (25%) of this job involved modular block wall work. As discussed above, WNN concluded that SD&I, LLC was liable for all hours worked at the First Bank job site because its job proposal included some modular block wall work. However, the mere presence in a job proposal of modular block wall work does not establish how many hours SD&I, LLC's employees actually engaged in modular block wall labor. In addition, SD&I, LLC is obligated under the CBAs to make contributions based only on the hours its employees actually engage in covered work, and not for all hours its employees work at a job site that merely includes some modular block wall work. Therefore, WNN's Report is not credible evidence that all hours worked by SD&I, LLC employees at the First Bank job site were reportable under the CBAs. Apart from WNN's Report, Plaintiffs have produced no evidence as to how many hours SD&I, LLC employees actually engaged in covered work at the First Bank job site. Therefore, the only evidence presented on this issue is Bergman's testimony that one quarter (25%) of the work performed at the First Bank job site was modular block wall work.

As a result, once again it is impossible for the Court to determine how WNN factored the First Bank job into its conclusions about SD&I, LLC's overall liability. Similarly, it is

---

[7]WNN's Payroll Examination Report refers to these jobs as CC-CCCC-070227 and CC-CRAIG-102105. Pls.' Ex. 9 at 38.

[8]WNN's Payroll Examination Report refers to this job as CC-FRST-070112.

impossible for the Court to determine what portion of SD&I, LLC's overall liability is attributable to the First Bank job. The most the Court can determine with any probability is that the First Bank modular block wall work represents 0.9% of the twenty-seven jobs WNN reviewed to create its Report. This percentage is equal to $157.82 of SD&I, LLC's total liablity in WNN's Report, and accordingly the Court will reduce SD&I, LLC's ultimate liability, if any, by this amount. Again, this solution is the most appropriate response to the issue presented, given the problems presented by WNN's methodology and Plaintiffs' evidence.

Bergman also testified about the Magic House job. Bergman testified that it was erroneous for WNN to conclude SD&I, LLC was liable for these hours, in that the hours appeared on two job proposals and thus were counted twice. Bergman did not support his testimony with any documentation, and nothing within WNN's Report supports Bergman's challenge. As a result, SD&I, LLC's challenge fails.

Finally, SD&I, LLC raises a distinct challenge to WNN's conclusion that it is liable for the hours worked on the four jobs for which its proposal included some modular block wall work. Bergman testified that when he was uncertain whether work performed on a certain job was reportable, his practice was to consult Casson. Bergman testified Casson provided assurances that the four jobs WNN categorized as "Jobs noted as other than MBW on Job List, but a Retaining Wall is included in the Proposal" were not reportable. Casson disputed Bergman's testimony, testifying that he did not recall any such discussion and that his notes did not reflect such a discussion.

The Court need not resolve this factual dispute, because whether Casson provided assurances is immaterial. The law is clear that oral statements of a union official cannot alter or supersede the written terms of a CBA. *Mo-Kan Teamsters Pension Fund v. Creason*, 716 F.2d

772, 777 (10th Cir. 1983); *Maxwell v. Lucky Constr. Co.*, 710 F.2d 1395, 1398 (9th Cir. 1983); *Waggoner v. Dallaire*, 649 F.2d 1362, 1366 (9th Cir. 1981); *Lewis v. Seanor Coal Co.*, 382 F.2d 437, 441-44 (3d Cir. 1967). As a result, even if Casson did provide assurances to SD&I, LLC, those assurances had no ability to alter the terms stating the scope of the work covered by the Modular Block Wall CBA. SD&I, LLC's final challenge to WNN's Report is without merit.

As set forth above, Plaintiffs have presented WNN's Payroll Examination Report as evidence that SD&I, LLC failed to make contributions as required by the Modular Block Wall CBAs. In this Report, WNN concluded that SD&I, LLC failed to properly report a total of 1,792.08 hours its employees engaged in work covered by the CBAs, resulting in a total liability of $17,535.67 in delinquent contributions, liquidated damages, and interest. As discussed above, the Court must reduce this amount by $5,348.37 due to the insufficiency of the evidence submitted by Plaintiffs. As a result, Plaintiffs are entitled to recover $12,187.30 from SD&I, LLC.

Plaintiffs also seek to recover $13,600.50 in WNN's examinations costs, $450.50 in legal costs, and $9,079.50 in attorneys' fees. Plaintiffs' request for these amounts was supported by a letter from WNN and an affidavit from one of their attorneys. This documentation provides sufficient support for Plaintiffs' request. *Mertens Plumbing & Mech., Inc.*, 552 F. Supp. 2d. at 956-57. The Court has reviewed these costs and finds them to be reasonable. Plaintiffs are entitled to recover these amounts.

### C. SD&I, LLC's Counterclaim against Plaintiffs

Defendant SD&I, LLC has asserted a counterclaim against Plaintiffs, alleging it has made excess contributions to Plaintiffs and is due repayment. Section 403 of ERISA provides that under certain circumstances, contributions made by mistake of fact or law may be returned

to the employer by the plan administrator.  29 U.S.C. § 1103(c)(2)(A)(ii).  Even if an employer makes a contribution by mistake, the plan administrator has discretion in deciding whether to return the contribution; a refund is neither mandatory nor automatic.  *See E.M. Trucks, Inc. v. Cent. States, Se. & Sw. Areas Pension Plan*, 517 F. Supp. 1122, 1124 (D. Minn. 1981).  Instead, principles of equity govern whether mistaken contributions should be returned to an employer. *Id.*

The Eighth Circuit has held that an employer may also seek a refund of contributions paid into a fund by asserting a federal common law action for restitution.  *Young Am. Inc. v. Union Cent. Life Ins. Co.*, 101 F.3d 546, 548 (8th Cir. 1996).  Principles of equity also govern this restitution action.  *Id.* (citing *UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of Am.*, 998 F.2d 509, 513 (7th Cir. 1993) (listing equitable factors to consider)).  However, if an employer makes a contribution that causes an employee to realize or enjoy a benefit, then that employer is not entitled to a refund.  *Id.* at 549 (citing *Constr. Indus. Ret. Fund of Rockford, Ill. v. Kasper Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993)).  The employer seeking return of the contributions paid bears the burden of proof.  *Cent. States, Se. & Sw. Areas Pension Fund v. Blue Sky Heavy Hauling, Inc.*, No. 08-CV-3338, 2011 WL 2142816, at *12 (N.D. Ill. May 31, 2011).

SD&I, LLC has failed to show it is due repayment because it mistakenly made contributions to the Fund.  At trial, Massa testified the Fund would exercise its discretion by retaining all contributions paid by SD&I, LLC.  This testimony was unrefuted.  In addition, SD&I, LLC has failed to show that it is entitled to repayment under principles of equity.  The only evidence presented by SD&I, LLC on this point was Bergman's testimony regarding Casson's assurances.  The Court finds this evidence to be insufficient.

In addition, SD&I, LLC has failed to show it is entitled to restitution of contributions made. At trial, Massa testified that the Fund provided health, welfare, and pension benefits to SD&I, LLC's employees at all relevant times. This evidence was unrefuted. As a result, SD&I, LLC's contributions caused its employees to realize and enjoy benefits, and thus SD&I, LLC is not entitled to a refund. Plaintiffs are entitled to judgment on SD&I, LLC's counterclaim.

III.     **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Symmetry Landscaping, Inc. shall have judgment on Plaintiffs' claim to recover delinquent contributions.

**IT IS FURTHER ORDERED** that Plaintiffs shall have judgment against Symmetry Design & Installation, LLC on Plaintiffs' claim to recover delinquent contributions. Plaintiffs are entitled to recover a total of $35,317.80 in delinquent contributions, liquidated damages, interest, costs, and attorneys' fees from Symmetry Design & Installation, LLC.

**IT IS FURTHER ORDERED** that Plaintiffs shall have judgment on Symmetry Design & Installation, LLC's counterclaim.

An appropriate Order of Judgment will be issued together with this Memorandum and Opinion.

Dated this <u>29th</u> day of <u>March</u>, <u>2012</u>.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE